# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 29, 2024

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 29.2024

*Sarah Pendleton*
SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Matter of the Dependency of<br><br>A.H., L.L., and S.O.-W.,<br><br>                Minor Children. | NO. 102558-1<br><br>EN BANC<br><br>Filed: <u>August 29, 2024</u> |

GORDON McCLOUD, J.—This case deals with the requirements for seeking appellate review in cases arising under Title 13 RCW.

In this child welfare case, the mother sought discretionary review of an interlocutory order maintaining out-of-home placement for her children. Under our court rules, the party seeking review in a child welfare case—like a party seeking review in any other case—must file a notice of appeal or a notice of discretionary review. RAP 5.1(a); RAP 5.3(a)-(b). That notice must comply with the requirements in RAP 5.3(a)-(b). The mother complied with those RAPs by filing a notice of discretionary review through her lawyer.

The appellate court dismissed review, though, because the mother's lawyer failed to file a separate document signed by the client, attesting that the lawyer had

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"specific direction from the party seeking review to file the notice," per RCW 13.04.033(3).

The first question for this court is whether RCW 13.04.033(3) requires the lawyer for a parent in a child welfare case to obtain "specific direction" from the client in advance of seeking appellate review. The answer to that question is yes—the plain language of the statute states that requirement.

The second question for this court is whether that requirement permits the appellate court to dismiss review if the lawyer fails to file a separate sworn statement, bearing the signature of the client, attesting to the fact that the client did give the lawyer specific direction to seek review. The answer to that question is no—the legislature did not state that it required such a separate sworn document or a signature from the client; RAP 5.3 does not require such things, and we will not read those requirements into a statute that is silent on the matter.[1]

---

[1] As our commissioner noted in his order granting review, this case is moot because shelter care is over and the case has long since moved into dependency. Comm'r's Ruling Granting Rev. at 5 (Jan. 12, 2024). He correctly granted review under the "continuing and substantial public interest" exception to mootness because (1) "[t]here is no authoritative guidance on" how to "satisfy the 'specific direction' requirement of RCW 13.04.033(3)," and (2) the Court of Appeals divisions appear to differ on how RCW 13.04.033(3) should be applied. *Id.* at 4-5 (citing *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)).

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

BACKGROUND

I.      Factual Background

Heather[2] is a Native woman with three children: A.H., L.L., and S.O.-W.

Mot. for Discr. Rev. Sealed App. (App.) at 276 (Ord. to Remand, *In re*

*Dependency of A.H.*, No. 101275-6 (Wash. Dec. 8, 2022)). Heather asserts that she

moved with her children from Minnesota to Washington in the fall of 2021 to

escape domestic violence. App. at 312-13, 325 (Verbatim Rep. of Proc. (VRP)

(Jan. 10, 2023)). In the months after they arrived, Heather and her children were

intermittently homeless. App. at 325. Some of the children have developmental

and mental health challenges, and Heather reportedly struggles with mental health

and substance abuse challenges. App. at 581-83 (Findings, Conclusions, & Ord. on

Evidentiary Hr'g on Remand, *In re Dependency of A.H.*, No. 21-7-00730-3 KNT

(consol. with No. 21-7-00732-0-KNT; No. 21-7-00731-1-KNT) (King County Sup.

Ct. Wash. Feb. 6, 2023)).

II.     Procedural Background

Here in Washington, the children's school reported potential physical abuse

to the Department of Children, Youth, and Families (Department or DCYF). App.

at 270 (Notation Ruling, No. 83496-7-I, at 2 (Wash. Ct. App. May 13, 2022)). The

---

[2] Heather is the pseudonym for the mother that is used by her attorney.

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

Department initiated shelter care proceedings and a judge ordered the children into emergency shelter care; the Court of Appeals denied review. Notation Ruling, No. 85056-3-I (Wash. Ct. App. July 17, 2023); Ord. on Mot. to Modify, No. 85056-3-I (Wash. Ct. App. Oct. 16, 2023). Heather then sought review of that shelter care order in this court. Mot. for Discr. Rev. (Nov. 13, 2023).

Department II of this court reversed the shelter care order due to the State's failure to apply the "active efforts" standard to these Indian children and their family, as required by ICWA and WICWA. App. at 277-78. It remanded for further fact-finding. *Id.*

Specifically, Department II reversed the shelter care order as to L.L. and S.O.-W., and ordered the trial court to return them to Heather "unless the court f[ou]nd that a return would put them in substantial and immediate danger or threat of such danger." App. at 277. With regard to A.H., Department II ordered the trial court to determine if there was reason to know that A.H. was an Indian child and, if so, to apply the same ICWA/WICWA[3] protections to him. *Id.* If that court did not find a reason to know A.H. is an Indian child, then we alternatively required the trial court to return A.H. to Heather unless the Department had made "reasonable

---

[3] Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1902-1963; Washington State Indian Child Welfare Act of 2011, ch. 13.38 RCW.

efforts" toward keeping A.H. with his mother prior to removal. App. at 278 (citing

*In re Dependency of L.C.S.*, 200 Wn.2d 91, 514 P.3d 644 (2022)).

On remand, the Department conceded that the court had reason to know that

A.H. was an Indian child. App. at 295. (VRP (Jan. 10, 2023)). The trial court's

evidentiary hearing order nevertheless kept all three children in shelter care

because returning them to Heather would place them in "substantial and immediate

physical, emotional, and psychological danger or threat of such danger." App. at

579-83, 585 (VRP (Jan. 23, 2023)).

Heather, through counsel, filed a motion for discretionary review of that

evidentiary hearing order in the Court of Appeals. She argued mainly that the trial

court misunderstood this court's remand order and violated WICWA by

maintaining out-of-home placement. Mot. for Discr. Rev., *In re Dependency of

A.H.*, No. 85056-3-I, at 1-2 (Wash. Ct. App. June 16, 2023).

The Department moved to dismiss review because Heather's trial attorney

had not "filed a specific direction" to seek review, signed by Heather, which the

DYCF claimed RCW 13.04.033(3) required. Mot. to Dismiss Discr. Rev. Filing

Due to Lack of Specific Directive (DCYF's Mot. to Dismiss), *In re Dependency of*

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

*A.H.*, No. 85056-3-I, at 1-4 (Wash. Ct. App. June 26, 2023).[4] The Court of

Appeals' commissioner granted the Department's motion to dismiss on the ground

that RCW 13.04.033(3) requires a sworn, signed statement from the client, filed

with the court, and Heather's lawyer failed to file that. Notation Ruling, No.

85056-3-I, at 2 (Wash. Ct. App. July 17, 2023). A panel of judges denied Heather's

motion to modify. Ord. on Mot. to Modify, *In re Dependency of A.H.*, No. 85056-

3-I (Wash. Ct. App. Oct. 16, 2023).

ANALYSIS

Generally, a party seeking review of a superior court decision must file a

notice of appeal or a notice of discretionary review. RAP 5.1(a); RAP 5.3(a)-(b).

That notice must comply with the requirements in RAP 5.3(a)-(b).

But in 1990, the legislature passed the "basic juvenile court act" to promote

greater stability in the foster care system. RCW 13.04.005; RCW 74.13.250

---

[4] Heather did not appear at a dependency fact-finding hearing below. DCYF's Mot. to Dismiss, at 2. The State argued that the lack of a signed specific direction and failure to appear meant Heather had fled the jurisdiction, citing to *criminal* fugitive disentitlement doctrine cases for that argument. *Id.* at 3 (citing *In re Pers. Restraint of Sayward*, 76 Wn. App. 200, 202, 884 P.2d 613 (1994); *State v. Rosales-Gonzales*, 59 Wn. App. 583, 585-86, 799 P.2d 756 (1990)). That doctrine allows courts in certain limited circumstances to "dismiss[] appeals where the *criminal* appellant fled the jurisdiction, escaped from jail, or violated the conditions of release pending appeal." *City of Seattle v. Klein*, 161 Wn.2d 554, 565, 166 P.3d 1149 (2007) (emphasis added). The Court of Appeals did not address this issue, and the parties now agree that we should not address whether the limited criminal fugitive disentitlement doctrine applies to this wholly different *civil* setting.

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

(quoting legislative findings). As part of that initiative, the legislature sought to

standardize the process for seeking appellate review of juvenile court decisions.

RCW 13.04.033, entitled "Appeal of court order—Procedure—Priority, when,"

states in full,

> (1) Any person aggrieved by a final order of the court may appeal the
> order as provided by this section. All appeals in matters other than
> those related to commission of a juvenile offense shall be taken in the
> same manner as in other civil cases. Except as otherwise provided in
> this title, all appeals in matters related to the commission of a juvenile
> offense shall be taken in the same manner as criminal cases and the
> right to collateral relief shall be the same as in criminal cases. The
> order of the juvenile court shall stand pending the disposition of the
> appeal: PROVIDED, That the court or the appellate court may upon
> application stay the order.
>
> (2) If the final order from which an appeal is taken grants the
> custody of the child to, or withholds it from, any of the parties, or if
> the child is committed as provided under this chapter, the appeal shall
> be given priority in hearing.
>
> (3) In the absence of a specific direction from the party seeking
> review to file the notice, or the court-appointed guardian ad litem, the
> court may dismiss the review pursuant to RAP 18.9. To the extent that
> this enactment [1990 c 284] conflicts with the requirements of RAP
> 5.3(a) or RAP 5.3(b) this enactment [1990 c 284] shall supersede the
> conflicting rule.

Clearly, this statute—including its subsection (3), requiring "specific

direction from the party seeking review to file the notice" seeking review—deals

with appellate procedure. Hence, it touches on matters controlled by RAP 5.3.

RAP 5.3 lists the mandatory prerequisites to perfecting a notice of appeal or notice

of discretionary review. Proof of "specific direction from the party seeking review to file the notice" is not among them. *Compare* RAP 5.3(a)-(b), *with* RCW 13.04.033(3). No appellate decision has addressed the relationship between RAP 5.3 and RCW 13.04.033(3). And practitioners have noted that the "purpose of [RCW 13.04.033(3)] is less than obvious." 2A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE RAP 5.3 author's cmt. 2, at 575 (9th ed. 2022).

We now hold that RCW 13.04.033(3) does require the lawyer to have "specific direction" from the client to seek review in cases arising under Title 13 RCW. But we also hold that a notice of appeal or notice of discretionary review that complies with RAP 5.3 fully satisfies that requirement.

I.     RCW 13.04.033(3)'s Plain Language Requires the Lawyer To Get the Client's Specific Direction before Seeking Review

The first issue is whether RCW 13.04.033(3) requires the lawyer to get the client's "specific direction" before seeking review. As the parties now agree, the statute's plain language and context answers that question: yes, the lawyer must have the client's specific direction before seeking review.

Our objective when interpreting a statute "'is to ascertain and carry out the Legislature's intent.'" *State v. M.Y.G.*, 199 Wn.2d 528, 531, 509 P.3d 818 (2022) (plurality opinion) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146

8

Wn.2d 1, 9-10, 43 P.3d 4 (2002)). If a "statute's meaning is plain on its face," then we "give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9 (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001);[5] *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). And we derive a given statute's plain meaning "from the ordinary meaning of the language at issue, . . . the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (citing *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003); *Campbell & Gwinn*, 146 Wn.2d at 10-12).

We therefore begin with RCW 13.04.033(3)'s plain language, in context. Once again, that subsection reads,

> In the absence of a specific direction from the party seeking review to file the notice, or the court-appointed guardian ad litem, the court may dismiss the review pursuant to RAP 18.9. To the extent that this enactment [1990 c 284] conflicts with the requirements of RAP 5.3(a) or RAP 5.3(b) this enactment [1990 c 284] shall supersede the conflicting rule.

RCW 13.04.033(3).

---

[5] *Abrogated by State v. Barber*, 170 Wn.2d 854, 873 n.4, 248 P.3d 494 (2011).

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

This subsection's opening sentence contains several undefined terms. RCW 13.04.011 (listing no definitions for key terms in RCW 13.04.033(3)). When terms are undefined in statute, we may use a dictionary to "'discern the plain meaning.'" *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017) (quoting *State v. Cooper*, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006)).

For the first phrase, "In the absence of a specific direction," the word "absence" means "failure to be present." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 6 (2002). The word "specific" means "intended for or restricted to a particular end or object." *Id.* at 2187. And the word "direction" means "guidance or supervision of action, conduct, or operation." *Id.* at 640. Thus, "in the absence of a specific direction" means that without the client's guidance about taking a particular action (here, seeking review), some consequence follows (the consequence identified in the fourth phrase below). Nothing in that definition requires that the "specific direction" or "guidance" be written or signed.

The second phrase in the statute, "from the party seeking review," identifies the entity who must give that "specific direction": the party seeking appellate review. RCW 13.04.033(3). Nothing in that definition limits "the party" to the parent; the word party covers any party, including the Department.

10

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

The third phrase, "to file the notice," just identifies the action that must be directed or guided: filing a notice of appeal or notice of discretionary review under RAP 5.3. RCW 13.04.033(3). The statute's second sentence reinforces this by identifying RAP 5.3 as the court rule on the same topic. *Id.* ("To the extent that this enactment [1990 ch. 284] conflicts with the requirements of RAP 5.3(a) or RAP 5.3(b) this enactment [1990 c 284] shall supersede the conflicting rule.").

The fourth phrase, "the court may dismiss the review pursuant to RAP 18.9," specifies the consequence that a court may impose if a party files a notice of appeal or discretionary review without "specific direction": dismissal under RAP 18.9 at the court's discretion. *See In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010) ("The term 'may' in a statute generally confers discretion." (citing *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 28, 978 P.2d 481 (1999) (citing *Yakima Valley (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993)))).

Taking these definitions together, RCW 13.04.033(3)'s plain language requires an attorney to have "specific direction"— or guidance—from the client about seeking appellate review before filing a notice seeking such review. If the attorney lacks such "specific direction," then the court can—at its discretion— dismiss the review.

11

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

In its briefing, the Department argued that the term "party" in RCW 13.04.033(3) means only parent. That would mean that the statute's "specific direction" requirement would apply only to the parent and not to the Department, and, by implication, only in child welfare cases. Suppl. Br. of DCYF at 13. The Department conceded at oral argument that the statutory language did not support that position, and we agree. Wash. Sup. Ct. oral arg., *In re Dependency of A.H.*, at 17 min., 29 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024051151/. RCW 13.04.033(3) imposes a "specific direction" requirement on any party seeking review under Title 13 RCW and is not limited to parents or child welfare cases.

We therefore hold that RCW 13.04.033(3) requires the attorney for any party in a Title 13 matter to have the client's specific direction or guidance in some manner—not necessarily written, not necessarily signed, and not necessarily sworn—before seeking review.

II.     A Notice of Appeal or Notice of Discretionary Review Satisfies RCW 13.04.033(3)'s Specific Direction Requirement

Because RCW 13.04.033(3) requires proof of specific direction, the second question for this court is what it is that satisfies that "specific direction" requirement. Heather argues that a notice of appeal or notice of discretionary

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

review filed pursuant to RAP 5.3 satisfies the specific direction requirement.

DCYF argues that Heather's reading would render RCW 13.04.033(3) superfluous

and that only a client-signed specific direction form satisfies the specific direction

requirement. The Court of Appeals agreed with the Department and ruled that the

statute requires counsel for the parent to file a sworn, client-signed "specific

direction" statement with the court to satisfy the specific direction requirement.  So

the specific question for this court is was the Court of Appeals' decision that the

statute requires the parent's lawyer to file a sworn, client-signed "specific

direction" statement with the court, correct?

The answer is no. The Court of Appeals (and the Department) interpreted the

statute incorrectly, as RCW 13.04.033(3)'s plain language and statutory context

make clear.[6]

### A.  Plain Language

As the discussion above shows, RCW 13.04.033(3)'s plain language

contains no requirement that the lawyer file a separate document, that such a

document contain the client's signature and be sworn, or that such a document

---

[6] For context, Heather argues that a notice of appeal or notice of discretionary review filed under RAP 5.3 satisfies the specific direction requirement. DCYF argues that Heather's reading would render RCW 13.04.033(3) superfluous and that only a client-signed specific direction form satisfies the specific direction requirement.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

must say that the lawyer has "specific direction" to seek review. It says nothing about any kind of sworn, signed, or filed proof at all. The rest of RCW 13.04.033 contains no such client-signed document requirement, either. RCW 13.04.033(1)-(3).

The Department asks us to read a sworn-signed-filed "specific direction" requirement into RCW 13.04.033(3), even though the legislature didn't put it there. But "the legislature intends to use the words it uses and intends *not* to use words it does not use." *State v. Nelson*, 195 Wn. App. 261, 266, 381 P.3d 84 (2016). Thus we cannot add such extratextual requirements to a silent statute. *See Jenkins v. Bellingham Mun. Ct.*, 95 Wn.2d 574, 579, 627 P.2d 1316 (1981) (citing *Auto. Drivers Loc. 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 598 P.2d 379 (1979); *Jepson v. Dep't of Lab. & Indus.*, 89 Wn.2d 394, 573 P.2d 10 (1977)); *State v. Larson*, 184 Wn.2d 843, 851-52, 365 P.3d 740 (2015)). RCW 13.04.033(3)'s plain language just does not require a sworn, signed specific direction filing as a prerequisite to appellate review.

### B. Statutory Context

RCW 13.04.033(3)'s context compels the same conclusion.

RCW 13.04.033(3) is obviously a subsection of RCW 13.04.033. RCW 13.04.033 applies evenhandedly to both parties in child welfare proceedings—the

State as well as the parent (as the parties now agree). *See* RCW 13.04.033(1) ("*Any person* aggrieved by a final order . . . may appeal" (emphasis added)); *State v. A.M.R.*, 147 Wn.2d 91, 95, 51 P.3d 790 (2002) (holding that phrase "any person" in RCW 13.04.033(1) includes the Department). Thus, if subsection (3) really created a new silent, sworn, signed "specific direction" filing requirement, it would fall on the Department as well as on the juvenile or the parent. It seems unlikely that the legislature really intended that cumbersome result.

RCW 13.04.033 also applies evenhandedly to all forms of review of all Title 13 matters. It covers not only review of dependency and termination orders but also review of juvenile offense matters. RCW 13.04.033(1) (stating that all appeals involving juveniles shall be handled like other civil and criminal appeals unless otherwise specified). Thus, if subsection (3) really created a new silent, sworn, signed "specific direction" filing requirement, it would apply to all sorts of parties in all sorts of proceedings. It seems unlikely that the legislature really intended such a widespread and inefficient result.

In fact, reading subsection (3) in the context of the rest of RCW 13.04.033, it seems absurd to read subsection (3) as burdening all sorts of litigants (including the State) in all sorts of actions (including juvenile offender actions in which the

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

juvenile has a constitutional right to appeal),[7] with such a new unstated, sworn, client-signed document filing requirement in all Title 13 cases. We typically reject such strained and unlikely interpretations.[8] *See Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007) ("A reading that produces absurd results must be avoided because '"it will not be presumed that the legislature intended absurd results."'" (quoting *State v. J..P*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting))))).

RCW 13.04.033(3)'s plain language and context thus compel the conclusion that the Court of Appeals erred in ruling that that statute silently imposes a new sworn, client-signed specific direction verification document filing requirement on parents in child welfare proceedings. Because RCW 13.04.033(3) cannot "'be reasonably interpreted in more than one way,'" that answers the second question presented; we need not turn to legislative history. *Yousoufian v. Off. of King County Exec.*, 152 Wn.2d 421, 433-34, 98 P.3d 463 (2004) (quoting *Vashon Island*

---

[7] *See State v. Kells*, 134 Wn.2d 309, 314-15, 949 P.2d 818 (1998) (citing *State v. Sweet*, 90 Wn.2d 282, 287, 581 P.2d 579 (1978)).

[8] This step is certainly not necessary to ensure that attorneys pursue the ends directed by the client and do so in consultation with the client. RPC 1.2 and 1.4 already provide that assurance.

*Comm. for Self-Gov't v. Wash. State Boundary Rev. Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995); *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002)).

### C. Legislative History

But as the State forthrightly acknowledged in its briefing, even if we did reach legislative history, it does not support the Department's argument that the statute silently imposes a sworn, client-signed "specific direction" document filing requirement on parents. The final bill report for the basic juvenile court act reads:

> Any notice of appeal or . . . discretionary review, related to . . .
> dependency . . . or termination of a parent and child relationship, must
> be signed by the person seeking the review or the person's guardian-
> ad-litem. *A sworn, written declaration by the person's attorney stating
> that the person has requested the attorney to file the notice and pursue
> appellate review is also acceptable.*

FINAL B. REP. ON SECOND SUBSTITUTE S.B. 6537, at 177, 51st Leg., Reg. Sess. (Wash. 1990) (emphasis added).

As the emphasized language shows, the legislature itself assumed that the attorney's filing sufficed without a separate, written, sworn filing from the client.[9]

---

[9] Our case law also supports this conclusion. In *In re Welfare of Messmer*, we allowed a parent to appeal a termination finding without a signed form petition for writ of certiorari, despite the fact that a statute required such a client signature. 52 Wn.2d 510, 512-13, 326 P.2d 1004 (1958) (reaching the merits of a father's appeal from a termination order despite the fact that the petition for writ of certiorari bore only the attorney's signature and not the father's signature (citing RCW 7.16.050)).

17

*In re Dep. of A.H., L.L., and S.O-W.*, No. 102558-1

CONCLUSION

RCW 13.04.033(3) requires an attorney in a case arising under Title 13 to obtain specific direction from the client before seeking appellate review on behalf of that client. A notice of appeal or notice of discretionary review filed by an attorney under RAP 5.3 fully satisfies that specific direction requirement.

Accordingly, we reverse the Court of Appeals.

But as this case is moot, "there is no relief that this court can offer." *In re Dependency of J.M.W.*, 199 Wn.2d 837, 850, 514 P.3d 186 (2022). We "remand to the trial court for any further proceedings necessary, consistent with this opinion." *Id.*

18

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.